[Docket No. 23]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| RALPH CHAMBERS, et al., | |
| Plaintiffs, | Civil No. 18-11980 (RMB/KMW) |
| v. | **OPINION** |
| PRECISION PIPELINE SOLUTIONS, LLC, | |
| Defendant. | |

**APPEARANCES:**

WALL & LONDON, LLC
By: Zachary R. Wall, Esq.
34 Tanner Street, Suite 4
Haddonfield, New Jersey 08033
      Counsel for Plaintiffs

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
By:  Eric C. Stuart, Esq.
    Michael Nacchio, Esq.
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
      Counsel for Defendant

**BUMB**, UNITED STATES DISTRICT JUDGE:

    Plaintiffs Ralph Chambers, Jeffrey Edmiston, Jr., and John Tomes bring this suit against their former employer, Defendant Precision Pipeline Solutions, LLC (hereafter "PPS"), primarily asserting that PPS failed to pay them the prevailing wage required under the New Jersey Prevailing Wage Act, N.J.S.A. §

1

34:11-56.25 et seq. ("NJPWA"). Plaintiffs further assert that the alleged failure to pay the correct prevailing wages also resulted in a failure to pay the correct amount of overtime, in violation of both the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56a et seq. ("NJWHL").[1] PPS moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Second Amended Complaint, asserting that the facts pled do not support a plausible conclusion that PPS violated the NJPWA, and therefore all three claims fail. The Court agrees; therefore PPS' Motion to Dismiss will be granted.

I.   FACTS

The Court has sifted through the many vague and marginally relevant allegations to ascertain the specific and concrete facts alleged to support the Plaintiffs' claims. The following recitation of facts is the result of the Court's efforts in that regard.

All three Plaintiffs-- Ralph Chambers, Jeffrey Edmiston, Jr., and John Tomes-- are pipefitters. (S.A.C. ¶¶ 7-9) All three are alleged to have worked for PPS on the "Rockford Eclipse Valves Replacement" project "during 2015 and 2016." (Id.

---

[1] This Court exercises federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2

at ¶ 25-26)  PPS is alleged to have "entered into a blanket contract" with "public utility" South Jersey Gas "for service agreement [sic] in which PPS was to provide supervision, labor, and equipment" in connection with the Rockford Eclipse Valve Replacement project.  (Id. at ¶¶ 11, 23)  The project is alleged to "consist of replacing 8,000 RE Valves over a two-year period."  (Id. ¶ 25)  The Rockford Eclipse Valve Replacement Project is alleged to be "state funded and/or state-incentivized."  (Id. ¶ 28)

Plaintiffs allege that in connection with this work, PPS paid Plaintiffs "approximately $15.00 per hour to $23.69 per hour" when "the correct and mandatory prevailing wage rate" was "approximately $46.00 to 63.53 per hour."  (S.A.C. ¶¶ 48-49)

**II. MOTION TO DISMISS STANDARD**

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 663.  "[A]n unadorned, the defendant-unlawfully-harmed me accusation" does not suffice to

3

survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, a district should conduct a three-part analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Third, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (internal citations, quotations, and modifications omitted) (quoting Iqbal, 556 U.S. at 675, 679).

**III. ANALYSIS**

   **A. New Jersey Prevailing Wage Act Claims**

Plaintiffs assert that the NJPWA applies to the work they allegedly performed for PPS on the Rockford Eclipse Valve Replacement project. PPS disagrees.

The NJPWA states in relevant part,

> [e]very contract . . . for public work to be done on property or premises owned by a public body . . . shall contain a provision stating the prevailing wage rate which can be paid (as shall be designated by the

4

commissioner) to the workers employed in the performance of the contract and the contract shall contain a stipulation that such workers shall be paid not less than such prevailing wage rate.

N.J.S.A. § 34:11-56.27.[2] The NJPWA defines both "public work" and "public body." For purposes of Plaintiffs' claims, "public work" means:

> construction, reconstruction, demolition, alteration, custom fabrication or repair work, or maintenance work, including painting and decorating, done under contract and paid for in whole or in part out of the funds of a public body, except work performed under a rehabilitation program. "Public work" shall also mean construction, reconstruction, demolition, alteration, custom fabrication or repair work, done on any property or premises, whether or not the work is paid for from public funds, if, at the time of the entering into of the contract the property or premises is owned by the public body[.]

N.J.S.A. § 34:11-56.26(5).

> "Public body" means:
>
> the State of New Jersey, any of its political subdivisions, any authority created by the Legislature of the State of New Jersey and any instrumentality or agency of the State of New Jersey or of any of its political subdivisions.

N.J.S.A. § 34:11-56.26(4).

To state a claim under the NJPWA, Plaintiffs must allege facts supporting a plausible conclusion that, pursuant to PPS's

---

[2] N.J.S.A. § 34:11-56.40 creates a civil action for recovery of "the full amount of such prevailing wage less any amount actually paid . . . by the employer together with costs and such reasonable attorney's fees as may be allowed by the court."

5

contract with South Jersey Gas for the Rockford Eclipse Valve Replacement program, Plaintiffs (1) did "public work" (2) "on property or premises owned by a public body." N.J.S.A. § 34:11-56.27.[3] The allegations of the Second Amended Complaint fail on both elements.

As the statutory definition demonstrates, there are two types of "public work." Both types require that the work be of a certain nature-- i.e., "construction, reconstruction, demolition," etc. N.J.S.A. § 34:11-56.26(5).[4] If the initial

---

[3] The NJPWA is clear that the legal inquiry focuses on the contract and work performed-- not on particular workers, nor employers, as Plaintiffs' briefing suggests. Contrast Opposition Brief, p. 8 ("Plaintiffs are 'workmen' and Defendant is a 'contractor' within the meaning of NJPWA.") with N.J.S.A. § 34:11-56.27 ("Every contract . . . for any public work to which any public body is a party or for public work to be done on property or premises owned by a public body . . . shall contain a provision stating the prevailing wage rate which can be paid (as shall be designated by the commissioner) to the workers employed in the performance of the contract and the contract shall contain a stipulation that such workers shall be paid not less than such prevailing wage rate.") (emphasis added); see also, Taveras v. PSC Indus. Outsourcing LP, 2018 WL 3201797 at *3 (D.N.J. June 28, 2018) ("New Jersey Courts have established that 'the [NJPWA] was passed to protect the compensation rates paid to laborers under a public work contract' and held that the NJPWA 'afforded no protection' to Plaintiffs not employed on a public works project.") (quoting Bankston v. Housing Authority of City of Newark, 342 N.J. Super. 465, 469 (App. Div. 2001)).

[4] There is a slight difference between the nature of work required for the two types of public work. The source of payment type of public work includes "maintenance work, including painting and decorating," whereas the location of work type does not. N.J.S.A. § 34:11-56.26(5). However, this difference appears to be immaterial to the claims in this suit.

6

nature of work component is established, then that work is public if it either (a) is "paid for in whole or in part out of the funds of a public body" (the source of payment type) or (b) takes place on a "property or premises [] owned by the public body" (the location of work type). Id.[5]; see also, Taveras v. PSC Indus. Outsourcing LP, 2018 WL 3201797 at *3 (D.N.J. June 28, 2018) ("Under the NJPWA, 'public work' applies to assorted tasks either 'done under contract and paid for in whole or in part out of the funds of a public body' or 'done on any property or premises . . . if, at the time of the entering into of the contract the property or premises is owned by the public body.'") (quoting N.J.S.A. § 34.11-56.26(5)). Stated another way, work is "public work" under the NJPWA if it is of a nature described by the statute and either paid for by public funds, or performed on public property. Specific to this case, Plaintiffs must allege facts supporting a plausible conclusion that they performed "construction, reconstruction, demolition, alteration,

---

[5] In this way, the NJPWA appears to contain a partial redundancy. With respect to the location of work type of "public work," the statute requires the payment of a prevailing wage for all "public work" done on public property, N.J.S.A. § 34:11-56.27, yet one type of "public work" under the definition of "public work," includes certain enumerated types of work done on public property, N.J.S.A. § 34:11-56.26(5). On the other hand, the source of payment type of "public work" has no redundancy. Even enumerated work paid for out of public funds, N.J.S.A. § 34:11-56.26(5), must be performed on a "property or premises owned by a public body." N.J.S.A. § 34:11-56.27.

custom fabrication or repair work" and that they performed this work either on public property, or received payment for the work from public funds. Id. The allegations of the Second Amended Complaint fail on all three elements.

First, the Second Amended Complaint vaguely alleges that in 2015 and 2016, while Plaintiffs were employed by PPS, "Plaintiffs' work duties included but were not limited to, regulator changes, installs, high pressure gas valves [sic] changes, and pipeline mechanic work." (S.A.C. ¶ 27) Critically, the Second Amended Complaint does not allege what specific work each Plaintiff performed in connection with the Rockford Eclipse Valve Replacement program.[6] Thus, there are no facts from which the Court might plausibly conclude that the work Plaintiffs performed on that project was of the nature enumerated by the NJPWA.[7]

---

[6] The Rockford Eclipse Replacement Valve program was not the only program on which Plaintiffs worked during the relevant time period. The Second Amended Complaint alleges that Plaintiffs worked on at least two other programs (S.A.C. ¶ 28), although it is not clear when or where such unspecified work in connection with these programs took place. Further, although Plaintiffs apparently allege that PPS entered into contracts with South Jersey Gas similar to the contract for the Rockford Valve Replacement program, the allegations as to these other programs are considerably more vague than the allegations as to the Rockford Eclipse Valve Replacement program, which as discussed herein, suffer from their own deficiencies.

[7] In this way, this case is distinguishable from Cooper v. Precision Pipeline Services, LLC, which Plaintiffs filed in sur-

Second, Plaintiff's allegation that the Rockford Eclipse Valve Replacement program was "state-funded and / or state-incentivized" (S.A.C. ¶ 28), fails to establish the source of payment component of "public work." The statute is clear; the work itself must be paid for with public funds: "work . . . paid for in whole or in part out of the funds of a public body." N.J.S.A. § 34:11-56.26(5) (emphasis added). Plaintiffs have not pled any facts supporting a plausible conclusion that they were paid out of public funds for their work on the Rockford Eclipse Valve Replacement program. The vague allegation that the entire program may have been "state-funded" in some unspecified manner is insufficient to support a plausible inference that public funds were used to pay Plaintiff's wages.

Third, the Second Amended Complaint does not allege where the work in connection with the Rockford Eclipse Valve Replacement program took place. Plaintiffs' sweeping allegation that their "job assignments [] included work on public buildings, facilities, and or land, including but not limited to" a list of 27 locations, none of which have any apparent connection to the Rockford Eclipse Valve Replacement program (S.A.C. ¶ 29), is insufficient to support a plausible conclusion

---

reply. [Docket Entry 32] In Cooper, the Plaintiff filed a certification specifically explaining what work he did.

that Plaintiffs performed the Rockford Eclipse Valve Replacement work on property or premises owned by a public body.

Thus, the Court holds that Plaintiffs have failed to allege sufficient facts in support of their NJPWA claims. Accordingly, PPS's Motion to Dismiss will be granted.

**B. Failure to Pay Overtime Claims**

Plaintiffs state that their FLSA and NJWHL claims are premised on the asserted underlying NJPWA violation. (See Opposition Brief, p. 12)  It necessarily follows, then, that the FLSA and NJHWL claims fail because the NJPWA claims fail. PPS' Motion to Dismiss will be granted as to the FLSA and NJWHL claims.

**C. Leave to File a Motion to Amend**

This is not a civil rights suit and so controlling precedent does not necessarily require this Court to automatically grant Plaintiffs leave to amend their pleading[8], particularly when the Second Amended Complaint is itself the product of the parties' conference with the Court concerning the sufficiency of Plaintiffs' factual allegations.[9]  Nonetheless,

---

[8] See generally, Mullin v. Balicki, 875 F.3d 140, 151 (3d Cir. 2017).

[9] On November 27, 2018, the Court held an in-person conference with the parties to discuss the allegations of the Amended Complaint. [See Docket Entry 21]  As a result, this Court ordered Plaintiffs to amend their complaint, which they did. [See Docket Entry 22]

the Court is mindful of "the general policy embodied in the Federal Rules favoring resolution of cases on their merits." Mullin, 875 F.3d at 149 (internal citation and quotation omitted). Therefore, the Court will grant Plaintiffs leave to file a Motion to Amend the Second Amended Complaint if Plaintiffs believe that they are able to, in good faith[10], correct the pleading deficiencies discussed herein. However, Plaintiff is advised that: (1) no further opportunities to amend will be granted absent good cause shown, or upon the opposing party's written consent, see Fed. R. Civ. P. 15(a)(2); (2) failing to file a Motion to Amend in response to this Opinion and accompanying Order will result in the dismissal of claims with prejudice; and (3) if the proposed Third Amended Complaint does not assert a cause of action raising a federal question, or if, upon an appropriate motion, the Court determines that the Third Amended Complaint fails to state a federal claim, the Court intends to decline to exercise supplemental jurisdiction over this suit pursuant to 28 U.S.C. § 1367(c)(3).

---

[10] See Fed. R. Civ. P. 11(b)(3) ("By presenting to the Court a pleading, written motion, or other paper . . . an attorney certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.").

## IV. CONCLUSION

For the above-stated reasons, PPS's Motion to Dismiss will be granted. Plaintiffs may, if they so choose, file a Motion to Amend within 30 days.[11] An appropriate Order accompanies this Opinion.

Dated: July 29, 2019         s/ Renée Marie Bumb
                             RENÉE MARIE BUMB
                             UNITED STATES DISTRICT JUDGE

---

[11] The Motion shall comply with L. Civ. R. 7.1(f).